## Mrs. Kate Quill et al. v. Houston & Texas Central Railway Company.

### No. 921. Decided June 21, 1900.

**1. Master and Servant—Negligence—Railway—Fences—Approval Limited.**

The reversal of judgment by the Court of Civil Appeals in this case approved on the ground that the servant assumed the risk, without passing on the question whether a railway company may be held liable, for negligence in failing to keep up a fence once erected, to an employe injured by running over stock. (Pp. 621, 622.)

**2. Master and Servant—Assumed Risk—Fences.**

A locomotive engineer who knows that the railway fences are defective and cattle frequently found on the track, assumes the risk of injury from derailment by running over them. (Pp. 616-618, 621.)

**3. Same—Question of Law.**

See evidence held to present a case in which, as matter of law, such knowledge was shown as charged the servant with an assumption of risk. (Pp. 617, 618.)

Error to the Court of Civil Appeals for the Fourth District, in an appeal from Waller County.

Kate Quill and others sued the railway company and had judgment. A former recovery by plaintiff had been reversed and remanded on appeal. 46 S. W. Rep., 847. Defendant appealed from the second recovery and the judgment was again reversed and remanded. Plaintiff applied for and obtained a writ of error on the ground that the ruling practically settled the case. The opinion of the Court of Civil Appeals was as follows:

"Fly, Associate Justice.—On a former appeal of this case (46 Southwestern Reporter, 847) the judgment was reversed and the cause remanded because the question as to whether the deceased knew of the defects in the fence inclosing the track of the railroad, and the frequency of cattle thereon, was not submitted as a question of fact to the jury.

"As a large portion of the brief of appellant is devoted to argument on the proposition that neither by common law nor statute is it made the duty of railroads in Texas to fence their tracks, it would seem that it labors under the misapprehension that this court had held that such duty devolved upon railroads. It was not so held in our former opinion, but it was said that: 'While it may not be the duty of a railroad company to servants operating its trains to inclose its roadbed, yet if the company, after having fenced it, negligently permits its fence to become so out of repair that stock can enter upon the track, and if the danger to its employes incident to operating its trains is by such negligence increased, and, if, by reason of such increased risk, one of such employes is injured by the derailment of an engine, caused by its collision with stock entering upon it on account of such defective fence, the company would, in

our opinion, be liable in damages for the injury thus occasioned its employes. An engineer accepting employment to operate an engine over a railroad which is inclosed assumes only such risks as are ordinally incident to operating an engine over an inclosed road, and has the right to assume that the road is properly fenced, and the fence in proper repair, and to act upon such assumption in running his engine; and he can not be held to have assumed the risk of his engine being derailed by collision with cattle on the track, unless he knew during the course of his employment that the inclosure was so defective as not to prevent cattle from entering upon the track.'

"The statutes of this State do not impose upon railroads the duty of fencing their roadbeds, the only reference to the matter being to the effect that if they are fenced they can not be held liable for killing stock unless negligence is proved. But when they have fenced their roads, a new duty to their servants arises just as it arises in the adoption of air-brakes or improved couplers or any other new appliance. When they have adopted the new appliance and men enter their service, it must be taken that it is done with the assumption that the appliance will be kept in order, so as to afford its full protection, if any, to the servant, and railroad companies will be liable for negligence in failing to exercise care in endeavoring to keep such appliances in proper repair, unless it be shown that the defects were known to the servant or he is placed in such a position that he must have known of such defects by the exercise of ordinary care. When a road is fenced the man who enters the service of the railroad company does so with a view to the increased protection afforded by the fence, and the duty rests upon the company to keep the fence in such condition as to afford the protection given by it, and its negligence in such respect will render it liable for injuries inflicted by such negligence, unless the employe is charged with knowledge of the negligence and assumes the risk arising from it.

"The evidence in this case establishes beyond doubt that appellant was guilty of negligence in not keeping its fence in such condition as to prevent cattle from entering on its right of way, and under our view of the law, should be held liable for damages for the death of James Quill had there been no testimony establishing knowledge upon his part of the condition of the fence. We think, however, that the evidence has shown beyond question that James Quill must have known not only that cattle were constantly gaining access to the right of way at different points along the route upon which he ran as engineer, but that he was placed in such a position as to be chargeable with notice that cattle were frequently entering the right of way at or near the point at which the derailment of the locomotive took place. The witness Cæsar Robinson, offered by appellees, swore that the cattle were on the right of way at that point all the time, and further, that 'they were in there in the daytime and the nighttime.' There is no contradiction of this testimony. The engineer was shown to be in the best position on the train for observing cattle on the right of way and that it was his duty to keep

a constant lookout for them. It was in evidence by witnesses that cattle were seen by them frequently at many places between Hearne and Houston, the part of the road over which deceased ran, and his reports between August 8, 1894, and November 14, 1895, show that at eight different times and places he had struck cattle and horses with his locomotive, and that he had been expostulated with for killing so many stock. The evidence establishes that he was in such a position as to have known that the fence was defective at different points all along the line, and having been for a long time engaged in the occupation of a locomotive engineer, he must have known the dangers attending the presence of cattle within the inclosure of the railroad company and must be held to have assumed the risk.

"The district judge applied the law given in our former opinion, and we think that there is no error in the charge of which appellant can properly complain. The evidence, however, showing knowledge on the part of the deceased of the condition of the fence is stronger than on the former trial, and, as we think, destroys the case made out by appellees.

"There were two other grounds of negligence alleged by appellees, but they were not supported by the evidence and were not submitted by the trial court to the jury.

"Because the verdict is not supported by the evidence, the judgment is reversed and the cause remanded."

*A. H. Willie & Sons* and *O. T. Holt,* for plaintiffs in error.—The issues as to the negligence of the defendant, the contributory negligence of the deceased, James Quill, and the assumption of the dangers of the employment, were questions of fact to be decided by the jury, and were, under proper instructions of the court, resolved in favor of plaintiffs, in accordance with the preponderance of the evidence, and can not be the subject of review on appeal to this court. Hall v. Hodge, 2 Texas, 328; Miller v. Schmullen, 37 Texas, 239; Legg v. McNeill, 2 Texas, 432; Cotton v. Campbell, 3 Texas, 495; Warren v. Shuman, 5 Texas, 441; Montgomery v. Culton, 23 Texas, 156; Telegraph Co. v. Jones, 81 Texas, 274; Flanagan v. Oberthier, 50 Texas, 382; Owens v. Railway, 67 Texas, 681; Harris County v. Campbell, 68 Texas, 26; Edrington v. Kiger, 4 Texas, 93; Gaunce v. Railway, 48 S. W. Rep., 524; McGee v. Railway, 78 Cal., 430.

It was the statutory duty of appellant to inclose its track with a suitable fence, and to keep it in repair for the protection of its employes. Rev. Stats., art. 4528; Railway v. Rowland, 70 Texas, 298; Railway v. Childress, 64 Texas, 346; Railway v. Young, 60 Texas, 201; Briggs v. Railway, 111 Mo., 173; Donnegan v. Erhardt, 119 N. Y., 468; Quackenbush v. Railway, 62 Wis., 411; Trice v. Railway, 49 Mo., 438; Railway v. Crider, 19 S. W. Rep., 618, Thorpe v. Railway, 27 Vt., 140; Railway v. Humes, 115 U. S., 512; Railway v. Beckwith, 129 U. S., 26.

Independently of any statute, it is a duty imposed by the common law upon a railroad corporation to inclose its track with a proper fence, and

to exercise reasonable care to maintain it in a safe condition for the benefit of employes on its trains. Railway v. Wilson, 79 Texas, 371; Eames v. Railway, 63 Texas, 660; Railway v. Vallie, 60 Texas, 481; Railway v. Delahunty, 53 Texas, 206; Railway v. Scott, 64 Texas, 549; Railway v. Oram, 49 Texas, 341; Railway v. Silliphant, 70 Texas, 623; Railway v. Lempe, 59 Texas, 19; Railway v. Hohn, 21 S. W. Rep., 942; Dickson v. Railway, 27 S. W. Rep., 476; Railway v. Beckwith, 129 U. S., 26; Bishop Non-Con. Law, sec. 691; Wood's Master and Servant, secs. 326, 329, 330, 352, 359; Railway v. Swett, 45 Ill., 201.

Independently of the nature of the duties required of railway companies by the common law and statutes, where the fence is actually constructed it was negligence to permit it to become out of repair so that stock could enter upon the track, for which an employe injured in consequence of such omission may recover. Quill v. Railway, 46 S. W. Rep., 847; Hall v. Railway, 35 S. W. Rep., 321, 322; Railway v. Keegan, 87 Fed. Rep., 849; McGee v. Railway, 78 Cal., 430.

The defendant having fenced its right of way and track, was charged with the duty of exercising ordinary care to keep the fence in a reasonably safe condition for the use if its employes.

The burden of proof was upon the defendant in error to show actual or presumptive knowledge on the part of Quill of the negligence referred to, and not upon the plaintiff in error to show want of such knowledge, and, under the very plainest rules of law, unless the testimony introduced upon the trial clearly, distinctly, and conclusively showed that Quill knew that defendant in error's fence was defective, and that cattle were getting within the inclosure, or by the exercise of reasonable care he could have known the same, or unless the testimony was such as that reasonable men, of which a jury is supposed to be composed, could not draw any other inference or come to different conclusions, the defendant in error has not established the fact that Quill was charged with a knowledge of the facts imputed to him. 14 Am. and Eng. Enc. of Law, 844. The testimony on this subject showed nothing more than that the witnesses testifying themselves knew of the defect in the fence and the presence of cattle in the inclosure, and could not possibly have been any evidence of what Quill himself knew about the matter, placed in an entirely different position as he was.

According to the authorities, an employe would not be presumed to know a risk which is not patent or obvious, beyond that he has a right to assume, without inquiry or investigation, that his employer has discharged his duty of furnishing him with safe and proper instruments, appliances, and surroundings. 75 Texas, 61. The case of Railway v. McNamara, 59 Texas, 255, is unquestionably an adjudication of the question in accordance with our contention. Accordingly as it was no part of the duty of Quill to inspect or know the condition of the fence, as we have observed, he was not chargeable with presumptive knowledge of a defect in the fence. The importance of the decision referred to consists in showing that whereas the question was submitted to the jury

as to whether or not Quill had knowledge of the defect in the fence, it would not have been improper for the court to have held, as a matter of law, that he had no such knowledge, as the defendant in that case complained of the refusal of the court to give such a charge, and the Supreme Court approved such refusal. Railway v. Keegan, 87 Fed. Rep., 853; Vance v. Saathoff, 2 Texas U. C., 658; Russell v. Mason, 8 Texas, 228; 19 Texas, 101; 23 Texas, 641; 24 Texas, 288; 5 Texas, 496; 2 Texas, 248; 2 Texas, 322, 499; Stroud v. Springfield, 28 Texas, 676; Tuttle v. Turner, 28 Texas, 775; Owens v. State, 35 Texas, 362; Latham v. Selkirk, 11 Texas, 321; Toohig v. Elliott, 2 Texas U. C., 643.

Conceding for argument's sake the fact that cattle frequently got within the defendant in error's inclosed right of way, and that Quill had full knowledge thereof, to do which, however, the testimony of the several witnesses referred to must be disregarded, Quill was not thereby put upon notice of the defect in the fence or the presence of any cattle upon the right of way resulting therefrom, nor did he on that account assume the risk. This is precisely what is decided in the case of Fordyce v. Culver, 22 Southwestern Reporter, 237. We are free to say that the general rule announced by the Texas decisions is to the effect that if an employe has knowledge of the negligence of his employer, or by the due exercise of care and diligence he might know the same, he assumes the risk of such negligence. This rule, however, has been so often modified that it practically ceases to be any rule at all, and each case coming up for adjudication must be decided according to its peculiar facts and circumstances. This statement of the law is fully borne out by the case of Railway v. Lempe, 59 Texas, 19. The case at bar is further distinguished from the general rule by the case of Railway v. Brentford, 79 Texas, 619.

Not only the Texas decisions but the great weight of authority supports our contention. In the leading case of Patterson v. Railway, 76 Pennsylvania State, 389, which the case of Railway v. Lempe expressly adopts as the rule of this State, it is held that "mere knowledge of a defect will not defeat recovery. Negligence on the part of the servant does not necessarily arise from his knowledge of a defect, but it is a question of fact to be determined from such knowledge and other circumstances in evidence." Thorpe v. Railway, 2 S. W. Rep., 3; Hamilton v. Mining Co., 18 S. W. Rep., 977; Railway v. Reesman, 60 Fed. Rep., 370; Railway v. Childress, 64 Texas, 348; Railway v. Rowland, 70 Texas, 306.

*Baker, Botts, Baker & Lovett* and *Frank Andrews,* for defendant in error.—The railroad company in this case having fenced its track, but, without regard to such fencing, cattle and other stock being frequently found upon the same, which fact was known to the deceased, he assumed the risk of his locomotive coming in contact with cattle upon defendant's road and the result of injury therefrom as a risk or danger incident to the operation of his locomotive, and the injury having resulted in his

death, appellees are not entitled to recover. Railway v. Martin, 51 S. W. Rep., 641; Railway v. French, 86 Texas, 96; Railway v. Smithson, 45 Mich., 212; Railway v. Tarver, 72 Texas, 312; Railway v. Crowder, 63 Texas, 503; Railway v. Bradford, 66 Texas, 734; Rogers v. City Railway, 76 Texas, 506; Railway v. Hester, 64 Texas, 403; Watson v. Railway, 58 Texas, 439; Railway v. Fowler, 56 Texas, 460; Railway v. Dillard, 70 Texas, 63; Pearce on Railroads, 372; Thompson on Negligence, 1008; Wood on Master and Servant, sec. 326; Railway v. Conrad, 62 Texas, 628; Railway v. McNamara, 59 Texas, 258; Railway v. Lemon, 83 Texas, 146; Railway v. Hester, 72 Texas, 40; Bonnet v. Railway, 31 S. W. Rep., 525; Jones v. Railway, 31 S. W. Rep., 706; Manson v. Eddy, 22 S. W. Rep., 66; Johnson v. Railway, 30 S. W. Rep., 95.

A risk ordinarily incident to the business of railroad employment is not one which necessarily often or frequently occurs, but is one which, though infrequently occurring, is liable to happen in the course of the employment. Railway v. Lempe, 59 Texas, 22; Railway v. Bradford, 66 Texas, 736; Railway v. Williams, 72 Texas, 164; Railway v. French, 86 Texas, 96; Railway v. Martin, 51 S. W. Rep., 641.

Where the only reasonable legal conclusion which can be drawn from the undisputed evidence shows that the facts will not sustain a judgment, a verdict should be instructed.

WILLIAMS, Associate Justice.—This writ of error was granted upon the allegation that the decision of the Court of Civil Appeals, reversing the judgment of the District Court and remanding the cause, practically settled the case, and the only questions for us to examine are whether or not such is the effect of the decision, and, if so, whether or not it is correct. The opinion of the Court of Civil Appeals holds that "the evidence has shown beyond question" that the deceased, James Quill, had assumed the risk from which his death resulted, and that it "destroys the case made out by appellees." We think the holding clearly settled the case made by the evidence before the court and the effect of the application for writ of error is to admit that appellees can not change the evidence upon another trial.

Having carefully examined the statement of facts, we are also of the opinion that the uncontroverted evidence justified the decision of the Court of Civil Appeals. That court held that the failure of the railroad company to keep its fences in such condition as to prevent access of stock to its track constituted such negligence as would have entitled appellees to recover had the evidence not shown also that deceased knew that stock was in fact commonly upon the road, and assumed the resulting risk by continuing in the service. Whether or not the defective condition of the fences would have been a ground for recovery by an employe, in the absence of the assumption of the risk, we are not called upon to decide. Assuming that it would, the other proposition is also necessarily true, and the evidence established beyond doubt the fact upon

which it depended. It is unnecessary that we add anything to the discussion of that proposition by the Court of Civil Appeals.

The judgment of that court, reversing that of the District Court, will be affirmed and judgment will be here rendered that plaintiffs below take nothing, etc.

*Rulings of Court of Civil Appeals affirmed and judgment rendered.*