LANCASTER et al. v. TUMEY. (No. 2977.)

(Court of Civil Appeals of Texas. Texarkana. Dec. 3, 1924. Rehearing Denied Dec. 18, 1924.)

1. Master and servant ⬤⟲180(1) — Railroad held liable for injuries to employee, proximately caused by negligence of coemployee, resulting in rail being violently moved.

Defendant railroad company *held* liable, under Rev. St. art. 6648, for injury to plaintiff employee from being struck by rail, caused by transfer table coming in contact with it, if proximate cause of injury was negligence of man operating table, or was negligence of other employees in leaving rail where it was.

2. Master and servant ⬤⟲107(4)—Employee held not engaged in construction work, within rule as to liability of master, where unsafe conditions grow out of character of work.

Employee, who assisted in unloading a machine and placing it upon concrete base, *held* not engaged in construction work, within rule governing master's duty where servant is engaged in construction work and is injured by reason of unsafe conditions growing out of character of work he is then performing.

Appeal from District Court, Harrison County; P. O. Beard, Judge.

Action by Price Tumey against J. L. Lancaster and another, as receivers of the Texas Pacific Railway Company. Judgment for plaintiff, and defendants appeal. Affirmed.

Bibb & Caven, of Marshall, for appellants.
Jones, Sexton, Jones, Buck & Gibson, of Marshall, for appellee.

HODGES, J. On June 12, 1923, the appellee, Tumey, was injured while at work as an employee in the shops of the Texas & Pacific Railway Company, at Marshall, Tex. He sued and recovered a judgment for damages in the sum of $7,800, and the receivers of the railway company have appealed.

The facts about which there is little, if any, dispute, are substantially as follows:

Tumey belonged to what they called the "bull gang," and his duties were those of a common laborer, such as removing rubbish and trash from the shops, loading and unloading machinery, and any other services of like character, when demanded by his superior. During the month of June, 1923, and before the injury, the appellants were engaged in making some improvements in the railway shops. A portion of the wooden floor was removed to make room for a concrete foundation laid for the support of a machine called a "big roller," to be used in rolling boiler iron. This machine weighed approximately 80,000 pounds, and was carried into the shops on a car, from which it was to be removed and placed on the concrete base previously prepared for it. The premises where these operations were carried on consisted of the boiler shop and the machine shop. Between them was located a large transfer table, used in transferring locomotives and cars from one track to another. On the floor of these shops were laid the necessary tracks over which the locomotives and cars passed. The transfer table was built over a pit, and was moved backward and forward as required. It was operated by means of an electric motor, in charge of an employee located near the center of the table. Some days before the date of the injury other employees of the appellants, with whom Tumey was not connected, had removed a portion of the floor in the boiler shop east of the transfer table. One or more iron rails on one track had been removed and left lying near the opening in which the transfer table was situated. The rail was not to be replaced for use, but was left there by those who took it up. A day or two before the injury the gang to which Tumey belonged was called upon to unload the boiler roller machine from the car, and slide it down onto its foundation. This was done by using skids supported by wooden blocks. While Tumey was standing near the pit over which the table was moved, and while in the act of taking a block to the man jacking up the machine, the table was, for some reason, moved. It struck the end of a rail which projected over the edge of the pit, causing the other end of the rail to strike Tumey violently on the leg. The blow knocked him down and broke one of his legs.

The evidence was sufficient to support a finding that the man in charge of the motor operating the table could have seen the rail when he put the table in motion. No one could tell why the rail had not been previously taken out of the shop, or how it happened to be in a position to collide with the table.

Appellants assail the judgment mainly upon the ground that the facts show that the appellee was engaged with other employees

in construction work, and the master did not owe him the duty of providing a safe place in which to work, under the circumstances attending this injury. The portions of the charge which present the main issues are as follows:

"Now, bearing in mind the foregoing instructions, if the jury shall believe from a preponderance of the evidence that the rail which struck the plaintiff was placed in a position so as to extend over the open pit by an employee of the defendants, and that such conduct, in so placing the same, constituted negligence, and that such negligence, if any, was a proximate cause of plaintiff's injury; or if the jury shall believe from a preponderance of the evidence that the employee of the defendant, while operating the transfer table, was guilty of negligence, in that he negligently failed to discover that the rail extended over the pit and negligently propelled the transfer table against the rail, thereby injuring plaintiff, and that such negligence, if any, was a proximate cause of plaintiff's injury; or if the jury shall find from a preponderance of the evidence that any of the employees of the defendant were guilty of negligence in placing the rail so as to extend over the pit; and if you shall find the defendants' servants and employees, while operating the transfer table, were guilty of negligence in failing to keep a lookout to discover the rail, and in causing the transfer table to strike it, and the jury shall believe that the plaintiff's injury was produced by reason of the said combined negligence, if any you find, and that such combined negligence, if any, was a proximate cause of plaintiff's injury—then, in either event, it will be your duty to find damages for the plaintiff, unless you find for the defendant under other portions of this charge.

"You are instructed that the defendants were not an insurer of the safety of the plaintiff, nor did they owe him the duty of furnishing him an absolutely safe place in which to discharge his duties; still the defendant did owe the plaintiff the duty of exercising ordinary care, taking into consideration all the circumstances of the situation to avoid inflicting injuries upon him, and, if they exercised ordinary care to avoid injuring him, then the plaintiff would under no circumstances be entitled to recover, and if you believe that the defendant exercised ordinary care to avoid injuring plaintiff then find for the defendant.

"You are further instructed that the plaintiff, in entering and remaining in defendant's employ, assumed all the risks ordinarily incident to the employment in which he was engaged, and, if you believe he was injured by a risk that was ordinarily incident to the employment in which he was engaged, then find for the defendant."

A number of special charges were requested by the appellants and refused. Most of those sought to apply the rule which governs the master's duty, where the servant is engaged in construction work, and is injured by reason of the unsafe conditions growing out of the character of the work he is then performing. As supporting the propositions urged, counsel refer to the following cases: Allen v. G. H. & S. A. Ry. Co., 14 Tex. Civ. App. 344, 37 S. W. 171; Armour & Co. v. Dumas, 43 Tex. Civ. App. 36, 95 S. W. 710; Citrone v. O'Rourke Engineering Co., 188 N. Y. 339, 80 N. E. 1092, 19 L. R. A. (N. S.) 340; and others.

[1] There are two reasons why the doctrine announced in those cases should not control the disposition of this case. One is: The appellee alleged and offered evidence sufficient to sustain a finding that the injury resulted from the negligence of another employee. It was not because of the mere presence of the rail upon the floor of the shop that Tumey was injured. He did not stumble over it or fall upon it. The rail was unnecessarily moved, and for no purpose connected with the work then being done by Tumey and his associates. His injury resulted solely from the blow he received, which was caused by the table coming in contact with the rail. Under the provisions of article 6648 of our Revised Civil Statutes, appellants would be liable if the negligence of the man operating the table was the proximate cause of the injury. They would also be liable if the injury proximately resulted from the negligence of a gang of other employees in leaving the rail in a situation where it might be violently moved in operating the table.

[2] The second reason is the appellee was not engaged in what is termed "construction work." He was merely assisting in unloading a machine and placing it upon its concrete base. The construction work, which was responsible for the presence of the rail, had been done by another group of employees some days prior to the injury. The rail was in no way connected with Tumey's work, and its presence did not result from anything done by the gang to which he belonged.

The principle of law invoked by the appellants has no application to the facts of this case. The court in his charge covered the main issues and applied the correct rules of law. The judgment will therefore be affirmed.