United States v. Morris, 10 Wheat. 246, 6 L. Ed. 314; Norris v. Crocker, 13 How. 438, 14 L. Ed. 210; Confiscation Cases, 7 Wall. 454, 19 L. Ed. 196; Cleveland, C., C. & St. L. Ry. Co. v. Wells, 65 Ohio St. 313, 62 N. E. 332, 58 L. R. A. 651; U. S. v. Tynen, 11 Wall. 88, 20 L. Ed. 153; Coles v. County of Madison, Breese (Ill.) 154, 12 Am. Dec. 161; Pierce v. Kimball, 9 Greenl. (Me.) 54, 23 Am. Dec. 537, and other cases cited in note 1; Cooley's Constitutional Limitations (8th Ed.) vol. 2, p. 757.

For the reasons given in this opinion, we have concluded that the statute involved is constitutional and valid. We accordingly answer the question certified, and say that the trial court erred in holding chapter 18 (House Bill No. 80), General Laws of the Second Called Session of the Forty-Second Legislature unconstitutional, and in denying the relator the relief sought.

## MONTGOMERY v. HOUSTON TEXTILE MILLS.
### No. 1484—5749.

Commission of Appeals of Texas, Section A.
Jan. 6, 1932.

Vinson, Elkins, Sweeton, & Weems, John Snell, and C. M. Hightower, all of Houston, for plaintiff in error.

Fulbright, Crooker & Freeman, W. B. Bates, and T. H. Cody, all of Houston, for defendant in error.

SHARP, J.

This suit was instituted by E. O. Montgomery, plaintiff in error, against Houston Textile Mills, defendant in error, to recover damages for personal injuries alleged to have been caused by negligence of the employees of defendant in error. Plaintiff in error alleged, in substance, that while working as an employee of A. T. Vick Company, the contractor for placing electrical wiring for defendant in error in a building belonging to defendant in error in course of construction by G. C. Street Construction Company under a contract with defendant in error, plaintiff in error stepped upon a nail which was sticking in a piece of lumber which had been negligently dropped and left by an employee of the defendant in error engaged in uncrating machinery for defendant in error upon the floor of the building in which plaintiff in error was working and thereby received serious injury to his foot. The grounds of negligence upon which defendant in error's liability is predicated are thus briefly stated as follows:

(a) The defendant in error was guilty of negligence in not furnishing the plaintiff in error with a reasonably safe place in which to work.

(b) The defendant in error was guilty of negligence in not removing the plank with the nails exposed from the premises at the time the machinery was uncrated.

(c) The defendant in error was guilty of negligence in permitting the plank with the nails in it to remain on the premises where the plaintiff in error was invited to perform for the defendant in error.

(d) Plaintiff in error did not know that the defendant in error had uncrated machinery on the floor where he was required to work and did not know that a plank with nails in it was or would likely be in said building; that the defendant in error knew that machinery had been uncrated in the warehouse where this plaintiff was required to work and knew or in the exercise of ordinary care should have known that the plank was left on the floor, and therefore the defendant in error was guilty of negligence in not warning the plaintiff in error of the danger to which he

was exposed by coming in contact with the plank with nails in it.

(e) The defendant in error was guilty of negligence in not furnishing the plaintiff with sufficient light to be able to see the floor of said premises and the plank with nails in it.

(f) The defendant in error was guilty of negligence in not lighting the building in which plaintiff in error was working at the time in question to enable him and other employees of A. T. Vick Company to discover the plank with the nails in it.

(g) The defendant in error was guilty of negligence in furnishing plaintiff in error with a place in which to work that was so dark that the plank with nails in it could not be seen.

(h) The defendant in error knew, or in the exercise of ordinary care should have known, that the only light in the warehouse and on the floor where plaintiff in error was working was that provided by the small windows near the ceiling and the door; and the defendant in error knew, or in the exercise of ordinary care should have known, that the light furnished was insufficient to sufficiently light the warehouse for the plaintiff in error to properly and safely perform his services as an electrician and that thereby defendant in error was guilty of negligence.

Defendant in error, in addition to general demurrer and general denial, specially alleged:

(a) That defendant in error admitted that it made and entered into a written contract with G. C. Street Construction Company as an independent contractor to erect a certain three-story warehouse of reinforced concrete, and that defendant in error made a written contract with A. T. Vick Company as an independent contractor to install in the concrete warehouse certain electrical equipment.

(b) That defendant in error would show that it stored certain machines in the warehouse with the consent of the contractor, G. C. Street Construction Company, and that the machines were in storage in the warehouse on or about October 8, 1926, that at and prior to this time defendant in error had no right to possess or control the premises or of the warehouse and did not assert or assume any possession or control over the warehouse or any part thereof, and that its storage of the machines in the warehouse was with the consent of the general contractor, G. C. Street Construction Company, and that the premises and improvements were not delivered to the defendant in error until after the injuries alleged by plaintiff in error in his petition to have occurred on October 8, 1926, and that the defendant in error was a mere licensee with reference to the storage of the machinery.

(c) That defendant in error would show that the contract made with A. T. Vick Company was made at a time that it was well known between the said A. T. Vick Company and defendant in error that defendant in error was not in possession and control of the premises, but that the improvements on the premises were in process of construction and in the possession of the general contractor for that purpose and that the defendant in error had never come into possession of the premises, except as a licensee, and that it had never gone into the operation of its business upon the premises, and that the labor being performed by plaintiff in error was being performed in anticipation of defendant in error going into possession of the premises and that it was the duty of the general contractor, Street Construction Company, and A. T. Vick Company, and all other independent contractors engaged in constructing the improvements on the premises, and of their servants, including plaintiff in error, to render the premises safe for the occupancy of themselves while thereon and render same safe for the defendant in error when the same was turned over to this defendant in error as a completed job.

(d) Defendant in error would further show that it had no knowledge of any nail being exposed on the premises, and that plaintiff in error's means of knowing of such nail was equal to and superior to that of defendant in error, and that plaintiff in error while engaged in the installing of electrical lights in the building in process of construction assumed the risk and danger incident to such construction from boards with nails therein.

(e) That plaintiff in error was guilty of contributory negligence.

At the close of the testimony introduced by the plaintiff in error, the trial court, on motion of defendant in error, instructed a verdict in its favor and upon return of the verdict judgment was rendered accordingly. An appeal was made to the Court of Civil Appeals, and the judgment of the trial court was in all respects affirmed. 24 S.W.(2d) 783, 786. For a more detailed statement of the pleadings, we refer to the opinion of the Court of Civil Appeals. A writ of error was granted.

Among other things, plaintiff in error contends that the Court of Civil Appeals erred in overruling the following assignment:

"The plaintiff's pleadings and evidence raising an issue of fact that the storing of the machinery on the first floor of the defendant's warehouse, uncrating it therein and leaving the crating board with a nail in it which stuck in plaintiff's foot on said premises was not in connection with or incidental to the general construction of the said warehouse but was an independent and disconnected act of the defendant, its agents, servants and employees and not by fellow-servants or servants of the general contractor, G.

C. Street Construction Company, the principle of law announced in the case of Armour v. Dumas [43 Tex. Civ. App. 36] 95 S. W. 710 is not applicable and the court erred in instructing a verdict in favor of the defendant and against the plaintiff."

The Court of Civil Appeals, in its opinion in affirming the judgment of the trial court, held:

"The owner of the premises cannot be held liable for an injury caused by the temporary condition of a building then in course of construction and not in his possession or control at the time its dangerous condition was brought about, when such temporary dangerous condition was unknown to the owner of the premises prior to the time the injury was caused thereby.

"In the case of Armour & Co. v. Dumas, 43 Tex. Civ. App. 36, 95 S. W. 710, 711, the Court of Civil Appeals, in an opinion approved by our Supreme Court by refusal of a writ of error, announced the rule applicable to the situation shown by the evidence in this case in the following language: 'But it is insisted that the duty of exercising care to furnish a reasonably safe place to work, resting upon appellant, was absolute and nonassignable. But to this general rule there is the well-known exception that the master is not liable where the danger to which the employee is exposed is merely a transitory one, due to no fault of plan or construction, but is one where the work is of such a character that as it progresses the environment of the servant must necessarily undergo frequent changes and the injury is traceable to one of these transitory changes. This exception finds its illustrations for the most part in cases involving the construction of works,' citing authorities.

"Other cases in which this rule is announced and followed are Gulf, C. & S. F. Ry. Co. v. Drennan (Tex. Civ. App.) 204 S. W. 691; Decatur v. Tompkins Co., 58 App. D. C. 102, 25 F.(2d) 526, 60 A. L. R. 402.

"It is to be observed that the ground upon which these decisions are based is that in the work of construction of a building temporarily dangerous conditions will necessarily arise, and any workman engaged in such construction assumes the risk of such danger, and that it would be unreasonable to hold the owner or the person in possession and control of the building responsible for such condition, of which he had no knowledge. The doctrine of the negligence of a fellow servant is not made the basis nor involved in the rule announced."

When considered in the light of the facts involved in the cases above cited, no fault is found with the rule announced in those decisions. The rule that the master or owner is not liable for transitory dangers arising during the construction of a building and incidental to and in connection with the construction of the building rests upon sound legal principles.

However, we think the facts of this case distinguish it from the facts involved in the decisions just cited. Let us briefly refer to the facts of this case. The testimony shows that the Houston Textile Mills owned the building under construction; that Montgomery was working for Vick Company, who held a contract as an independent contractor, to place some electrical wiring in the building; that Street Construction Company had the contract to construct the building; and that the employees of the Houston Textile Mills were not in any manner engaged in the construction of the warehouse. They went into the incompleted warehouse under the instructions of the Houston Textile Mills to uncrate some machinery. The machinery uncrated had nothing to do with the warehouse. It was not to be used in the warehouse under construction, but was to be later removed and placed in the mill—a separate and distinct building. If the employees of the Houston Textile Mills had not uncrated and left the board with the nails in it on the premises, Montgomery would not have been injured at the particular time and place. Mr. Mitchell, general manager of the Houston Textile Mills, testified:

"At the time A. T. Vick and Company started work wiring the building, we had motors from the General Electric Company and looms from the Compton and Knowles Loom Company and miscellaneous machinery, such as is used in a cotton mill on the lower floor. We were to use that machinery for the manufacture of goods, it had not been set up, we were merely storing it there. * * *

"The machinery was crated when it came in and was skidded, some of it was not crated. That that was crated, our employees uncrated it and put the tarpaulin on it. * * *

"We were hard pressed for storage space and we had to use the building and cover all the stuff with tarpaulin. * * *

"The machinery was to go in the addition to our mill, and it was stored in the warehouse until the addition to the mill was completed, so as to be erected, it was not all stored there."

The evidence in this case tends to show and raises the issue that plaintiff in error was exposed to an injury not arising during the construction of the building nor incidental to and in connection with the construction of same. Plaintiff in error being an employee of A. T. Vick Company, who had a contract with defendant in error to do certain work in the warehouse, and in pursuance of that contract was rightfully there to do his work, and the evidence rais-

ing the issue that it was on account of the acts of the employees of defendant in error in uncrating the machinery in storage for the use and benefit of defendant in error not connected directly or indirectly with the construction of the building, which acts of negligence were the proximate cause of the injury sustained by plaintiff in error, invokes the rule that the owner of the building owed him the duty of exercising ordinary care to furnish him a reasonably safe place to work and that the owner is not immune from liability for the acts of negligence of. his employees causing his injury. It became a question of fact to be determined, and the trial court and Court of Civil Appeals erred in holding as a matter of law that defendant in error was not liable. See Memphis Cotton Oil Co. v. Gardner (Tex. Civ. App.) 171 S. W. 1082 (writ denied); Mosher Mfg. Co. v. Boyles, 62 Tex. Civ. App. 636, 132 S. W. 492 (writ denied); Lancaster v. Tumey (Tex. Civ. App.) 266 S. W. 833; St. Louis Southwestern Railway Co. v. Gillenwater (Tex. Civ. App.) 284 S. W. 268, 271; Buchanan & Gilder v. Murayda, 58 Tex. Civ. App. 473, 124 S. W. 973, 976 (writ denied); Labatt's Master and Servant (2d Ed.) vol. 6, § 2500; Thompson's Commentaries on the Law of Negligence, vol. 1, §§ 968, 979.

It is stated in Labatt's Master and Servant, supra, as follows: "It is well settled that the owner of property rests under a higher obligation to protect from danger persons whom he has invited upon it, than is exacted from him in respect to trespassers, intruders, mere volunteers, or bare licensees. This is a duty which rests upon all persons, and which does not therefore pertain particularly to the relation of master and servant."

In section 968, Thompson's Commentaries on the Law of Negligence, the general rule as to the duty of the proprietor or owner to use reasonable care to keep one's premises safe for the benefit of persons expressly or impliedly invited thereon is announced in the following language: "The owner or occupier of real property is under the duty of exercising reasonable or ordinary care and prudence to the end of keeping his premises safe for the benefit of those who come upon them by his invitation, express or implied; and if, through a neglect of this duty, they are, without negligence or fault of their own, injured by reason of any negligent defect therein, he must pay damages. The person so invited to come upon the premises of the other, is entitled to assume that they will be in a reasonably safe condition."

Again, in section 979, the rule as to what duty the proprietor or owner owes to an independent contractor or his employees or servants is stated as follows: "It is not necessary to suggest that where a proprietor engages an independent contractor to do work upon his premises, the contractor, while executing the work, will be there in pursuance of the invitation of the proprietor, and the proprietor will, under the principles discussed in this chapter, be under the duty of exercising ordinary or reasonable care, to the end of promoting his safety. In almost every such case there is the further implication that if the contractor brings third persons, his own employees, his partners or assistants, to assist him in executing the contract, such persons are presumably upon the premises by the invitation of the owners, and he owes to them the same measure of care, to the end of promoting their safety, that he owes to the contractor himself—and this, although no contractual relation exists between the proprietor and them."

Therefore we recommend that the judgment of the district court and the Court of Civil Appeals be reversed and this cause remanded to the district court for another trial.

CURETON, C. J.

The judgments of the district court and Court of Civil Appeals are both reversed, and the cause remanded, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.