AMACKER et al. v. SKELLY OIL CO.

No. 10373.

Circuit Court of Appeals, Fifth Circuit.

Dec. 18, 1942.

Rehearing Denied Jan. 27, 1943.

432

John J. Watts, of Crane, Tex., and Henry Russell, of Pecos, Tex., for appellants.

Ed. M. Whitaker, of Midland, Tex., for appellee.

Before SIBLEY and HUTCHESON, Circuit Judges, and DAWKINS, District Judge.

HUTCHESON, Circuit Judge.

The suit was for damages for death by asphyxiation. The claim was that the defendant on whose premises and under whose general direction the deceased, though sent there by an independent contractor, had been working, in cleaning B. S. from oil tanks, had negligently discharged its duty to exercise ordinary and reasonable care to see that the tanks were first made free of asphyxiating gases or to provide deceased with protection therefrom. The defenses were a denial that the deceased was asphyxiated, a denial that the defendant had been guilty of any breach of duty, and averments that deceased was working not for defendant but for an independent contractor, that he was experienced and did not need instruction in his duties, that such danger of asphyxiation as there was was well understood by him and he voluntarily assumed their risks and, if they were too great, was guilty of contributory negligence in entering the tank as he did without taking necessary precautions against injury. There was a trial to a jury, testimony that there was gas in the tank, that deceased and his helper had smelled it and had agreed that he ought not to stay in too long, that as tanks were cleaned of their sediment the gas tended to become more active and that it was dangerous to stay in a tank having such gases in it longer than a few minutes at a time. There was testimony that the deceased had worked in the tank in question the day before, that it had been opened and aired out since, and that that method of preparing tanks for entry was a method customarily used by defendant and by others in that field. But there was other testimony that where tanks were impregnated with this sour or poisonous kind of gas, it was customary either to steam the tanks thoroughly before having men enter them or to provide the men with masks. It was in testimony too that deceased had worked as a roustabout for many years in oil fields, that Gibbins & Heasley, Inc., his employer who had sent him to the defendant to do this job of cleaning out the tanks was in the business of furnishing men to oil companies for work as called for, and that it either sent them, as it did this time, without a foreman and without tools, or with a foreman and with tools, according to request. That on this occasion it was merely called upon to send two men without a foreman and without tools, that the defendant was to direct when and how they were to do the work and provide them with the necessary tools to do it. It also appeared in the record, not in the testimony on the trial but in plaintiff's motion for a new trial on newly discovered evidence, that the American Petroleum Institute's manual for cleaning petroleum storage tanks provided as safety measures in doing such work (1) that there should be a careful test made for gases in the tank, (2) the tank cleaning crew should be provided with suitable gas masks, lifelines, etc., and this should be particularly done in tanks containing sour crudes, for the presence of hydrogen sulphide must be expected in tanks which have contained these products, and in high concentration it cannot be detected by smell.

At the conclusion of all this evidence, which to say the least of it presented many points of controversy, the defendant moved for an instructed verdict on these grounds: (1) that plaintiff had not shown that deceased died as a result of gas asphyxiation; (2) that the deceased was guilty of contributory negligence in not wearing a gas mask; (3) that he assumed the risk of injury from asphyxiation and was guilty of contributory negligence in doing the work in the way he did it; and (4) that defendant was under no duty to furnish deceased a gas mask or inform him of the danger of the work, that duty resting on Gibbins & Heasley, Inc., his employer.

The district judge, of the opinion that the evidence failed to show any breach of duty by defendant, instructed a verdict for defendant.

Appellant here, citing Restatement Torts Negligence 414 and 416,[1] United Production Corp. v. Chesser, 5 Cir., 107 F.2d 850; Montgomery v. Houston Textile Mills, Tex. Com.App., 45 S.W.2d 140; North American Dredging Co. v. Pugh, Tex.Civ.App., 196 S.W. 255; Crow v. Continental Oil Co., 5 Cir., 100 F.2d 292, and others of like import, insists that under the uncontradicted evidence, the duty of due care to protect deceased from the dangers of asphyxiation while working in the tank was on the defendant. Insisting too that the evidence made out a case for the jury as to whether there was a breach of that duty, and whether deceased's death was the proximate result of that breach, or was the result of natural causes or of his own contributory negligence or fault, she urges upon us that the judgment must be reversed and the cause remanded for a new trial.

Appellee, not disputing that a duty of due care may be owing to an invitee, the servant of an independent contractor coming on premises to work, insists that this case is ruled by the principle announced in Armour & Co. v. Dumas, 43 Tex.Civ. App. 36, 95 S.W. 710, 711; Kuptz v. Sollitt & Sons Construction Co., 5 Cir., 88 F.2d 532; and like cases, that an owner is not liable for injuries caused by the changing character of the work where the very dangers to be anticipated inhere in and necessarily arise from the work to be done. It also insists that, assuming a duty to warn an inexperienced worker of, and protect him from, dangers, the undisputed evidence shows that deceased was an experienced worker, that he knew the dangers and that he deliberately and will full knowledge thereof chose his own way of doing the work, and as a matter of law, caused his own injury. It also insists that the evidence wholly fails to show death from asphyxiation.

■ It would serve no useful purpose to canvass and discuss the many authorities appellant and appellee cite. It is sufficient to say that the doctrine appellee invokes does not apply to this case where the work is static and precautions against injury from it can be easily taken. Cf. Montgomery v. Houston Textile Mills, supra, and Reed Co. v. McDavid, 5 Cir., 120 F.2d 843. On this record, the defendant had supervision and control over deceased and was under a duty to exercise due care to see that the dangerous work it put him to doing was done by reasonably safe and prudent means and methods, and deceased in going into the tank to do the work required with the tools and equipment and in the way provided by the defendant had a right to assume that the defendant had taken adequate precautions, unless, and this, as the other questions the case presents including whether he was asphyxiated, was a question for the jury, the dangers of doing the work in the way he did it were so obvious to him that it might be found that he voluntarily took upon himself the risk of death by asphyxiation. Without, therefore, undertaking to indicate what the jury's verdict, on the facts, should have been, or should be, we hold that defendant owed a duty to deceased, that there was ample evidence to take the case to the jury on all the issues, including cause of his death, defendant's negligence or deceased's contributory negligence and his assumption of risk. Cf. United Production Corp. v. Chesser, 5 Cir., 95 F.2d 521; Southern Pacific Co. v. McCready, 9 Cir., 47 F.2d 673, and that for the error of instructing a verdict for defendant, the judgment should be reversed and the cause remanded for further and not inconsistent proceedings.

Reversed and remanded.

---

[1] "Sec. 414 Negligence in Exercising Control Retained by Employer.

"One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for bodily harm to others, for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care."

"Sec. 416 Work Dangerous in Absence of Special Precautions.

"One who employs an independent contractor to do work, which the employer should recognize as necessarily requiring the creation during its progress of a condition involving a peculiar risk of bodily harm to others unless special precautions are taken, is subject to liability for bodily harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions."